IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MiiCs & PARTNERS, INC., et al.,

    Plaintiffs,

v.

FUNAI ELECTRIC CO., LTD., et al.,

    Defendants.

SAMSUNG DISPLAY CO., LTD.,

    Intervenor.

Civil Action No. 14-804-RGA

## Memorandum Order

Presently before the Court is Intervenor Samsung Display Co.'s Motion for Partial Summary Judgment of Non-Infringement of U.S. Patent No. 5,995,176 ("the '176 patent").[1] (D.I. 387). I have considered the parties' briefing. (D.I. 390, 421, 460, 528, 529). I held oral argument on November 16, 2017. (D.I. 535) ("Tr."). For the reasons that follow, I will grant Samsung's motion as to the '176 patent.

Samsung moved for partial summary judgment on the basis that the accused products do not infringe asserted claims 1 and 4 of the '176 patent. (D.I. 390 at 24). It is clear from the parties' briefing that the issue here boils down to one of claim construction. I therefore requested at oral argument that the parties submit supplemental briefing on the claim construction issue.

---

[1] I previously granted Samsung's motion for partial summary judgment (D.I. 387) as to the '589 and '190 patents. (D.I. 548).

As I understand it, Samsung's motion turns on whether a limitation in the asserted claims is drawn to capability or instead requires a particular structural configuration. The disputed limitation reads, "said liquid crystal layer being divided into a plurality of regions having different orientation of liquid crystal for one of said pixel electrodes." ('176 patent, 5:46–48). Plaintiffs argue the asserted claims, and, more specifically, the disputed limitation, are drawn to capability (D.I. 528 at 1), while Samsung argues they are structural (D.I. 529 at 1). The parties agree that if the limitation is not drawn to capability, then the accused devices do not directly infringe the asserted claims of the '176 patent. (*See* Tr. at 73:23–25, 81:16–19; *see also* Tr. at 80:6–15).

To support their argument that the claims are drawn to capability, Plaintiffs point to Figures 8A, 8B, 9A, and 9B, which, according to Plaintiffs, show that "the invention of the '176 patent enables the orientation of the liquid crystals to be controlled through an externally applied voltage." (D.I. 528 at 3). Further, according to Plaintiffs, "The specification confirms that every instance of 'being' in the claim is directed to the capability of the device *when turned on – i.e.*, when it performs its function as a television." (*Id.* at 7). To construe the claim language as structural, Plaintiffs contend, would be to ignore the claim language and the nature of the accused products. (*Id.*; Tr. at 83:18–23). Further, Samsung's construction, Plaintiffs assert, would read the word "being" out of the claims. (D.I. 528 at 7; Tr. at 81:12–82:8). Contrary to Samsung's contentions, Plaintiffs argue, the specification makes clear that the word "being" in dependent claims 2 and 3 refers to the capability provided by the recited structure. (D.I. 528 at 7). Finally, Plaintiffs assert that the '176 patent file history, which shows that the patentee

2

amended the patent title to be more descriptive, supports a finding that the claims are drawn to capability. (*Id.* at 7–8).[2]

Samsung counters by arguing that the plain meaning of the claim limitation is structural. (D.I. 529 at 1). It notes the claims do not use any of the words the Federal Circuit has generally found to indicate capability. (*Id.* at 4). Samsung further argues the patent specification describes the liquid crystal layer in structural terms. (*Id.* at 2 (citing '176 patent, 1:65–2:7, 1:11–14)). Samsung cites to additional language from claim 1, including, "openings being provided in said pixel electrodes," which it argues is a "plainly structural feature of the liquid crystal display apparatus, always present in the device whether the device is ON or OFF." (*Id.* at 3). According to Samsung, "a bias voltage being applied to said conductive light shield layers," is similarly structural. (*Id.* at 4). Finally, Samsung argues, "the fact that liquid crystal displays may be designed to be used in their ON state does not imply the disputed limitation is directed to function or capability." (*Id.*).

I am not persuaded that the disputed limitation is drawn to capability. The '176 patent unquestionably covers an apparatus. (*See* '176 patent, 5:42 (claiming a "liquid crystal display apparatus")). "A patent applicant is free to recite features of an apparatus either structurally or functionally." *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997). The Federal Circuit has held that use of the words "for" or "programmable," among others, indicates that the patentee is claiming an apparatus in terms of its functionality. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204–05 (Fed. Cir. 2010) (finding claim terms reciting components with specific

---

[2] Plaintiffs further argue, "Contrary to Defendants' assertions, the claims are not limited to twisted nematic ("TN") mode LCD devices." (D.I. 528 at 4). I do not understand Samsung to be arguing that the claims are limited to TN mode devices, and, in fact, Samsung represented to the Court at oral argument that its motion is not based on the argument that "the claims are directed to one design or the other." (Tr. at 75:1–10). I find it unnecessary, therefore, to address Plaintiffs' argument on that point.

3

purposes, "*for preventing* execution" and "*for obtaining* a Downloadable," to be directed to capability) (emphasis in original); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991) (finding use of the word "programmable" to suggest capability). Further, in its cases considering whether claim limitations are drawn to capability, the Federal Circuit has repeatedly emphasized that "the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *E.g.*, *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). Where "a claim [] recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Finjan*, 626 F.3d at 1204 (internal citation omitted).

Here, the disputed limitation, "said liquid crystal layer being divided into a plurality of regions," is not drawn to capability. ('176 patent, 5:46–47). Nothing in the limitation or the surrounding claim language suggests that "being divided" refers to the capability of the apparatus to "orient[] the liquid crystal layer into a plurality of liquid crystal regions having different orientations." (D.I. 528 at 1). Contrary to Plaintiffs' assertions, the word "being" does not somehow transform the limitation into one drawn to capability. Rather, the claims use the word "being" followed by a past participle, for example, "divided," to indicate that a particular structural feature is present in the invention.

That the disputed limitation is not properly understood as drawn to capability is further supported by the remaining language in asserted claim 1 and the other claims of the '176 patent. Claim 1 contains the limitation, "openings being provided in said pixel electrodes." ('176 patent, 5:48–49; *see also* 6:25–26, 60–61). "Openings" are clearly structural features. Again, use of the word "being" after "openings" does change the nature of the limitation. Further, claims 2 and 3, which depend from claim 1, recite, "said TFTs being connected to one of said pixel electrodes,"

4

('176 patent, 5:58; *see also id.* at 6:39–40), "said conductive light shield layers being connected to a gate electrode" ('176 patent, 5:59–60; *see also id.* at 6:40–41), and "said conductive light shield layers being connected to a respective one of said storage capacitor lines" ('176 patent, 5:65–67; *see also id.* at 7:5–6). Each of these limitations similarly describes a structural feature of the apparatus, that is, a certain component "being connected" to another.

Claims 6 through 10 contain similar limitations, as well as the phrase "being performed." (*E.g.*, '176 patent, 6:11–12 ("a plurality of different rubbing operations being performed upon said first oriented layer")). In light of the specification, which describes the "rubbing operations" in the context of a method of manufacturing (*e.g.*, *id.* at 3:64–4:11), "being performed" is properly understood as "having been performed" during the manufacture of the "oriented layer." Thus, again, the word "being" does not change the nature of the limitation so as to be drawn to capability.

There is, however, one limitation that uses the word "being" in such a way that seems to suggest capability or function. That limitation reads, "a bias voltage being applied to said conductive light shield layers." (*Id.* at 5:53–54). "[A] bias voltage being applied" seems to indicate the apparatus' underlying capability to be turned on or made active. Ideally, "being" ought to have the same meaning throughout the claims. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent."); *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998) ("A word or phrase used consistently throughout a claim should be interpreted consistently."). Nevertheless, that this limitation, which includes the word "being," seems drawn to capability, does not mean all

5

limitations, including the one at issue, are drawn to capability. As explained above, the various other limitations that use the word "being" clearly recite structural features of the apparatus.

While I agree with Plaintiffs that the claims appear to be directed to the apparatus in the on state, I do not believe that means the claims are drawn to capability. Rather, the claims appear to describe the apparatus in terms of its structural configuration when turned on. The nature of the accused products does not change the analysis. As Plaintiffs note, the accused products are "television[s] having one, single mode of operation – turned on to display images." (D.I. 528 at 7). The claims, however, are not limited to televisions, and, that the accused products have one mode of operation is inconsequential. It is undisputed that the accused products do not meet the limitation at issue when sold, at which point they are in the off state. (D.I. 390 at 25–26; D.I. 421 at 24–25; Tr. at 75:4–5, 76:4–6). While the parties agree the accused products meet the limitation when the televisions are turned on (*see* D.I. 421 at 25; D.I. 390 at 25–27), Plaintiffs have pled only direct infringement.

Further, Plaintiffs' reliance on *Finjan* is unavailing. In *Finjan*, the non-method claims at issue "recite[d] software components with specific purposes." 626 F.3d at 1205. Those components included, among others, "a logical engine *for preventing* execution" and "a communications device *for obtaining* a Downloadable." *Id.* (emphasis in original). As Plaintiffs note, the court found this language "describe[d] capabilities without requiring that any software components be 'active' or 'enabled.'" *Id.* Unlike the claims in *Finjan*, however, the '176 patent claims nowhere recite a component of the apparatus followed by the word "for" with a corresponding purpose or function for that component. Thus, *Finjan* is distinguishable.

Finally, I am not persuaded by Plaintiffs' argument that certain portions of the specification and the file history indicate the claims are drawn to capability. Plaintiffs cite to

6

descriptions in the specification of how the application of an external voltage serves a "stabilizing" function (D.I. 528 at 3 (citing '176 patent, 5:1–8, 30–36)) and how the recited structures function "to substantially increase the capacity of the pixels" (*id.* at 4 (quoting '176 patent, 3:9–13)). Plaintiffs note further that after the patent examiner objected to the original title of the '176 patent, the applicant amended the title to include the language, "Capable of Shielding Leakage of Light through the Discontinuity of Orientation." (*Id.* at 8 (quoting Exh. E)). Although the patent title and the descriptions in the specification upon which Plaintiffs rely refer to certain functions of the invention, that does not mean the patent claims those functions. To the contrary, the plain language of the claims indicates it does not.

Thus, I find that the disputed limitation is not drawn to capability. Samsung's motion (D.I. 387) is therefore **GRANTED** as to the '176 patent.

Entered this ___1___ day of December, 2017.

                                                                             */s/ Richard G. Andrews*
                                                                            United States District Judge